## CIRCUIT COURT OF BALTI-MORE CITY

Filed June 3, 1892.

JOHN H. RILEY

VS.

JOHNS H. R. NICHOLSON.
SURVIVING PARTNER, &C.

DENNIS, J.—

A deed of trust for the benefit of creditors, executed by a lunatic, is not void, but voidable.

Such a deed can only be set aside in a Court of Equity, in a direct proceeding instituted for that purpose, by the lunatic himself when he recovers, or by his committee in the lunatic's name while the lunacy continues, or by his privies in blood or estate after the death of the lunatic, upon proof that it operates to his disadvantage. Credi-tors are not privies.

A surviving partner may make a deed of trust for the benefit of creditors of the firm. A deed of trust for the benefit of creditors, which conveys only a part of the grantor's property, is valid, if no preferences are given and no releases are exacted.

Unfitness of character on the part of the trustees named in a deed for the benefit of creditors is no ground of itself to justify the setting aside of the deed.

The firm of J. J. Nicholson & Sons, composed of Johns H. R. Nicholson, and Andrew J. Nicholson, Bankers, doing business in the City of Baltimore, was dissolved on the 5th day of January, 1892, by the death of Andrew J. Nicholson, and Johns H. R. Nicholson continued the business and took possession of the assets of the firm.

Letters of administration on the estate of Andrew were granted to John M. Carter and Rebecca T. Nicholson by the Orphans' Court of Baltimore City, of which city the said Andrew had been a resident, while the said Johns is a resident of Baltimore County.

On the 14th of January, 1892, the said Johns H. R. Nicholson made a deed of trust, both in his own right and as surviving partner of J. J. Nicholson & Sons, of all his own estate, as well as of all the estate of the firm of J. J. Nicholson & Sons to John M. Carter and Matthew K. Aiken for the benefit of creditors, and John M. Carter and Rebecca T. Nicholson, as administrators of Andrew J. Nicholson, also joined in it for the purpose of expressing their assent to its provisions.

This bill is filed by certain creditors of the firm and also of Johns H. R. Nicholson, in their own right, as well as on behalf of all other creditors who may make themselves parties to the cause, to set aside the said deed of trust as being void as against creditors, and for the appointment of a receiver to distribute the assets; to which bill a general demurrer has been filed on behalf of the trustees.

The deed was executed in duplicate, one being filed for record in Baltimore City, the residence of the deceased partner, the other in Baltimore County, the residence of the surviving partner, about one hour and a half later in the day. It conveyed to the trustees all of Johns H. R. Nicholson's estate, as also all the estate of the late firm of J. J. Nicholson & Sons, upon the following trusts: 1st, to keep the two funds separate and apart: 2d, out of each fund to pay, 1st, such liens or claims as are properly chargeable to

that fund, and are liens by operation of law, or preferred claims under the Insolvent Law of Maryland, and then out of the remaining fund belonging to the partnership, to pay the partnership debts in full, if sufficient, and if not, then ratably; the surplus of the partnership estate, after thus discharging all its debts, to be divided between Johns H. R. Nicholson's individual account and the administrators of Andrew J. Nicholson, in proportion to the respective interests of the partners in the firm, but carrying and adding to the assets of Johns H. R. Nicholson's individual estate, his proportion of said surplus, and then out of the remaining fund belonging to the individual estate of Johns H. R. Nicholson, after payment of the preferred claims above specified, and adding to said remainder the balance due him from the partnership fund, to pay all the individual liabilities of the said Johns H. R. Nicholson in full, if the fund was sufficient for that purpose, and if not, then ratably, and if any surplus remained, after discharging the firm liabilities and his individual liabilities then to pay over the surplus of his individual estate to the said Johns H. R. Nicholson. The deed then provided that if the partnership assets should prove insufficient to pay the partnership debts and the individual assets of Johns H. R. Nicholson should be more than enough to pay his individual debts, then the surplus of individual assets, after payment in full of individual debts, shall be carried over to the partnership fund; and after being thus applied, if any balance of the individual estate should remain, it should be paid over to the said Johns H. R. Nicholson.

Since the execution of the deed, Johns H. R. Nicholson has been adjudicated an insolvent, and Samuel D. Schmucker, his permanent trustee, has been made a party to the suit.

The bill assails the validity of this deed upon several grounds; I will endeavor to consider them briefly in the order in which they were discussed in the very able argument of the counsel at the hearing.

I. The first objection urged is, that at the time of its execution, the grantor was of unsound mind, and was prevailed upon by undue influence to make it.

Whatever may be the law elsewhere, it must be considered as settled doctrine in this State, that the deed of a lunatic or person *non compos mentis*, is not *void*, but *voidable* only. At law, it cannot be attacked at all; the only remedy is in equity, by a direct proceeding for that purpose, at the suit of those entitled to raise the question, and then it will only be set aside when shown to be to the disadvantage of the insane grantor. And this is true as to all deeds, without distinction, whether they convey real or personal estate. Key vs. Davis, 1 Md. 43; Chew vs. Bank of Baltimore, 14 Md. 318; Evans vs. Harlan, 53 Md. 609.

Moreover, this proceeding to have the deed declared void can only be availed of by the lunatic himself, or, after his death, by his privies, in blood or estate. If he recovers, he can take the proceeding himself; while he is insane, it must be taken by his committee, but in the name of the lunatic; it is only after his death that the privilege is allowed the privies in blood or estate. 1 Story's Equity, Section 225; 4 Allen 337, Carrier vs. Lears.

A creditor is in no sense a *privy;* his relation is purely a contractual one. Freeman on Judgments, Section 338. So that it is clear that the present plaintiff's cannot sustain the attack upon this deed upon the ground of the insanity of, and undue influence exerted upon the grantor;

1st Because they are not in a position to urge that objection, and

2d Because even if they had a standing in Court for that purpose, they have not shown, and it is difficult to see how they could show, that a deed which conveys the grantors property in trust for the payment of his just debts can be said to be to the disadvantage of the grantor; on the contrary, such a deed is looked upon with favor by the law, and is declared to be praiseworthy and proper. Farrell vs. Farnen, 67 Md. 81.

The only ground upon which creditors can assail such a deed is because it tends to hinder, delay or defraud them in the collection of their debts, and if the deed accomplishes this result it will be set aside, without regard to the sanity or insanity of the grantor.

II. But it is further insisted that the deed in question does tend to de-

lay, hinder and defraud creditors, because it does not convey all of the grantors property; and under this head, it is contended;

1st That a surviving partner cannot make a deed of trust for the benefit of creditors, because the interest in the real estate of the deceased partner descends to the heirs at law as against the deceased partner; and for this proposition the cases of Goodbury and Stevens, 5 Gill 1, and Ebert vs. Ebert, 5 Md. 357, are relied on. Upon this point, it need only be said that those cases establish the directly contrary doctrine; for it is expressly determined that "real property purchased with partnership funds and for partnership purposes is to be regarded in a Court of Equity, *as between the partners* and *their creditors*, personal estate for the payment of partnership debts, and the adjustment and winding up of partnership concerns." Ebert vs. Ebert, Supra.

And the right of a surviving partner to make such a deed, especially where the administrator gives his assent thereto—as was the case here—seems to be fully recognized in Gable vs. Williams, 59 Md. 52.

2d It is claimed that the fact of duplicate deeds, recorded in different jurisdictions, avoids the conveyance, because the one recorded in Baltimore County where the grantor resided conveyed his personal estate, and only the real estate therein situated, while the one recorded in this city conveyed only the real estate situated here, and thus neither conveyed all of the grantor's property. These deeds were duplicates in all respects, and I think should be treated as constituting, as they were clearly intended to do, but one transaction, and conveying all of the grantor's property in the only manner in which it was possible for him to convey it.

3d It was further claimed that the provision that Andrew J. Nicholson's interest in the partnership assets, after payment of the partnership creditors, should be paid over to his adiministrators, rendered the deed void, because the balance of the fund thus remaining should have been administered by the trustees, who should have secured an order from the Orphans' Court for that purpose.

This provision was entirely proper. After payment of the partnership debts, the balance of Andrew J. Nicholson's interest in the partnership fund clearly must have been paid over to his administrators, to be by them administered in the Orphans' Court, where his individual creditors could prosecute their claims. It is preposterous to say that the Orphans' Court should have been asked, or that they would have ever consented, to pass an *order*, directing that a fund especially committed by law to their administration, should be turned over to private parties for administration by them. And such these trustees were, as they need not have asked the Court of Equity to assume administration of the trust. Such a proposition is equivalent to saying that in no case could a surviving partner ever make a deed of trust for the benefit of creditors— a right, however, which, as we have seen, the case of Gable vs. Williams expressly recognizes.

I have treated these three propositions under this head, thus briefly, because even if they should all have the effect contended for by the plaintiff, still they would not be ground for setting aside the deed of trust. For, even if for any of the reasons urged, the deed should be construed as not conveying all of the property of the grantor, yet it is unquestionably true that the property that is conveyed is devoted to the payment of debts, in the manner and according to the priorities required by law; the deed gives no preferences and exacts no releases; and upon what principle can such a deed, although conveying only a part of the grantor's property, be held to be a deed tending to hinder, delay or defraud creditors? It is only upon the theory that the deed is calculated to hinder, delay or defraud them in the collection of their debts, by putting the debtor's property beyond their reach, that they have any standing in a Court of Equity to set it aside; as even a judgment creditor has no *jus in re* Freeman on Judgments, Sec. 338. The dee⁻ simply appropriates a portion of the grantor's property, to be divided among his creditors according to their legal priorities; the rest of his property is still liable to any remedies the creditors may have against it, and

261

these remedies are in nowise hampered by the deed.

It is in fact, a deed in aid of creditors, rather than one hostile to their interests. The counsel for the plaintiffs concede that there is no provision of the insolvent law which makes void such partial assignment; but the whole argument is that, because the deed to a trustee in insolvency must embrace all the insolvent's estate, therefore, a deed to a trustee for the benefit of the creditors must have· the same provision. I know of no principle upon which such a proposition can be supported, and no sound reason which can be given for it.

An attempt was made to deduce the conclusion from certain words used by Judge Alvey in his opinion in the case of the National Park Bank vs. Lanahan, 60 Md. 510, where he says: "A debtor in failing circumstances may convey all his property in trust for the payment of creditors," and it is argued that as he *may* convey all, therefore he *must* convey all.

But it is perfectly plain from an examination of that case, that not only was this question not before the Court, and not in the mind of the judge, but a proper deduction from the language used, when taken in connection with the points there under discussion, would seem to be against the proposition of the plaintiff; for if a debtor in failing circumstances can devote *all* of his property in trust for creditors, giving no preferences, without such deed being construed to hinder or defraud them, it would seem a *fortiori* he could devote a *portion* for that purpose, when the balance was left subject to all their legal remedies.

III. It was further urged against the validity of the deed that the trustees were improper parties for the trust; because Carter was the administrator of Andrew Nicholson, and as such, his interest might conflict with his duty as trustee, and because Aiken had been confidential clerk of the firm —knew of their improper transactions, and was, moreover, insolvent.

These facts might be good reasons why other trustees should be substituted, but furnish no ground for assailing the validity of the deed itself.

It is true, the character of the trustees appointed may furnish evidence. in connection with other facts, to prove fraud *in fact* upon the part of the grantor; but certainly no authority can be found in this State for the proposition that the mere fact of the appointment of improper parties as trustees is sufficient of itself, to justify the Court in holding the deed of assignment void.

Finding no valid objection to the deed I will sign an order sustaining the demurrer to the bill.